**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable William J. Martínez**

Civil Action No. 10-cv-02372-WJM

DANIEL STUART,

      Applicant,

v.

RAE TIMME, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**

---

This matter is before the Court on Applicant Daniel Stuart's Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Docket No. 12).  Respondents answered the Application (Docket No. 26) and Applicant filed a traverse (Docket No. 27).  As Applicant is proceeding *pro se,* I must construe his pleadings liberally and hold him to a "less stringent standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Traverse, and the state court record (Docket No. 35), I conclude that the Application should be denied.

## I.      Background

Applicant was convicted by a jury of one count of aggravated robbery, one count of accessory to aggravated robbery, four counts of menacing, one count of accessory to menacing, one count of vehicular eluding, one crime of violence count, and one count of possession of not more than one ounce of marijuana in Case No. 03CR2556 in the Jefferson County District Court of Colorado.  Pre-Answer Resp. at Ex. 2, p. 6.  The Colorado Court of Appeals summarized the facts in Applicant's case as follows:

> At trial, the prosecution presented evidence that defendant (1) was the getaway driver for a robber who used a gun to threaten four employees of a Red Lobster restaurant and rob the restaurant; (2) led police on a high-speed chase through a residential neighborhood, endangering a number of people in the process; (3) was arrested only after a police car rammed the side of the getaway car in a school parking lot; and (4) possessed a small amount of marijuana in one pocket.
>
> Defendant's theory of defense at trial was he had been forced to assist the robber in getting away from the restaurant.  In statements made to the police following his arrest, defendant claimed to have gone with the robbery to the restaurant, thinking that it was a homeless shelter, and was surprised when the robber ran out of the restaurant and toward the car with a cash drawer in one hand and a gun in the other.  Defendant stated that, upon returning to the car, the robber pointed a gun at him and screamed at him to drive away.  Defendant consistently maintained that he knew nothing of the robber's plan to rob the restaurant and that the robber had forced him at gunpoint to drive away.
>
> The prosecution, however, presented evidence that (1) the building was clearly marked as a Red Lobster restaurant; (2) defendant kept the car idling while the robber went inside; (3) as the robber came out of the restaurant, defendant drove the car "extremely fast" up to, and "came to a very abrupt stop" at, the edge of the walkway; (4) after the robber got into the car, defendant drove away immediately; (5) the getaway car "sped" off and "squealed out of the parking lot"; (6) witnesses heard or saw nothing that could be construed as defendant being threatened by the robber; and (7) immediately upon being arrested, defendant claimed to know nothing about a gun.

*People v. Daniel Stuart*, No. 06CA0841 (Colo. App. May 7, 2009) (unpublished opinion).

Following the jury trial, Applicant was sentenced to a total of thirty-two years in prison.  *Id.*  Applicant filed a direct appeal to the Colorado Court of Appeals, and the appellate court affirmed his convictions and sentence on May 7, 2009.  Pre-Answer Resp. at Ex. 3.  The Colorado Supreme Court denied certiorari review on October 13, 2009.  *Id.* at Ex. 4.

On March 11, 2010, Applicant filed a post-conviction motion pursuant to Colorado Rule of Criminal Procedure 35(c) in which he alleged that he received ineffective assistance of trial counsel.  Pre-Answer Resp. at 4.  The trial court summarily denied the Rule 35(c) motion, and Applicant filed an appeal to the Colorado Court of Appeals.  *Id.*  The Colorado Court of Appeals affirmed the trial court on September 22, 2011.  *See People v. Stuart,* No. 10CA0862, 2011 WL 4398038 at *1 (Colo. App. Sept. 22, 2011) (unpublished opinion).  The mandate issued on November 17, 2011.

Applicant initiated the instant action in this Court on October 15, 2010.  He filed an Amended Application on November 3, 2010, and a Second Amended Application on December 2, 2010.

In the Second Amended Application, Applicant asserted the following claims:

1.  The trial court erred when it prevented the jury from hearing an exculpatory statement by Applicant's co-defendant.

2.  The trial court erred when it gave an inadequate response to a jury question concerning the differences between complicitor liability and liability for conspiracy to commit a crime.

3.  Applicant's conviction for menacing should be a lesser included offense of his conviction for robbery.

4.  Applicant's conviction for three menacing counts is supported by insufficient evidence.

3

5.  The trial court abused its discretion during sentencing.

6.  Applicant's trial counsel was ineffective for helping to draft the inadequate response the trial court provided to the jury.

On December 15, 2010, Magistrate Judge Boyd N. Boland entered an order directing Respondents to file a Pre-Answer Response and address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses.  Respondents filed a Pre-Answer Response on December 23, 2010. Applicant filed a Reply on January 14, 2011.

On January 31, 2011, Magistrate Judge Boland entered an order finding that the Second Amended Application was a mixed petition, and subject to dismissal pursuant to *Rose v. Lundy*, 455 U.S. 509, 522 (1982), because Applicant had failed to exhaust all of his claims before seeking relief in federal court.  Therefore, Magistrate Judge Boland ordered Applicant to show cause why the Second Amended Application should not be denied as a mixed petition.  Magistrate Judge Boland informed Applicant that he may elect to dismiss any unexhausted claims and pursue only those claims for which state remedies already have been exhausted, or that he could dismiss the entire action without prejudice in order to exhaust state court remedies.

Applicant filed a response to the Order to Show Cause on February 22, 2011, asserting that he wished to dismiss his unexhausted claims and proceed only with his exhausted claims.  Therefore, on March 17, 2011, the Court entered an order that dismissed Claims Five and Six as unexhausted, and directed Respondents to file an Answer that fully addressed the merits of Claims One through Four.  The Court also

4

entered an order directing Respondents to file a complete copy of Applicant's state court proceedings.

On March 21, 2011, Respondents filed a Notice with the Court explaining that the state court record in Applicant's case was not currently available because of a post-conviction appeal that was pending in the Colorado Court of Appeals.  Respondents filed an Answer on March 28, 2011.  Applicant filed a Traverse on April 18, 2011.

On January 12, 2012, the Court entered an order directing Respondents to file a report within thirty days and provide an update on the status of Applicant's post-conviction appeal.  Respondents filed a status report on January 12, 2012, indicating that Applicant's post-conviction appeal had concluded.  Therefore, on February 16, 2012, the Court entered a second order directing Respondents to provide a complete copy of Applicant's state court proceedings.  The state court record was filed on March 29, 2012.

## II.    Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the Applicant is in custody in violation of the Constitution or laws or treaties of the United States.  The court does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state

prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceeding in the Colorado Court of Appeals which was the final substantive proceeding in the state appellate review process.

Because the Application was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)).  Under AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (citation omitted).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent,* 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).  A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the Applicant's case.'" *Lockyer v. Andrade,* 538 U.S. 63, 75 (2005) (quoting *Williams,* 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams,* 529 U.S. at 409-10, 412).  A "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams,* 529 U.S. at 411). Finally, when analyzing a petition, all determinations of factual issues by the state court are presumed to be correct and the Applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

## III.    Discussion

Claims One through Four are the claims remaining at issue in this action.

7

**A. Claim One**

First, Applicant claims that the trial court violated his constitutional rights by preventing him from presenting evidence to demonstrate that Applicant's co-defendant told the prosecution's investigator that Applicant was not involved with the crime. Second Amended Application at 9. In addressing this claim, the Colorado Court of Appeals determined the following:

> Defendant contends that the trial court erred in precluding him from eliciting evidence of a hearsay statement made by the robber, after the prosecution opened the door to that testimony. We disagree.
>
> On direct examination of an investigator, the prosecution elicited evidence of statements the investigator heard defendant make at his preliminary hearing. On cross-examination, defendant wanted to elicit evidence that, at the preliminary hearing, the investigator had testified to a statement the robber made to the police during the investigation. The robber stated that defendant "had nothing to do with this."
>
> Defendant asserted that, by asking the investigator what defendant had said at the preliminary hearing, the prosecution had opened the door to evidence of the investigator's testimony at the preliminary hearing about what the robber said. The trial court disagreed and precluded defendant from eliciting the robber's hearsay statement.
>
> A trial court has substantial discretion in deciding questions concerning the admissibility of evidence, and absent an abuse of this discretion, a trial court's evidentiary rulings will be affirmed. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). Under this standard, a trial court's ruling will not be overturned on appeal unless it was manifestly arbitrary, unreasonable, or unfair. *People v. Melillo*, 25 P.3d 769, 773 (Colo. 2001).
>
> The "opening the door" doctrine represents "an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression." *Id.* at 775.
>
> Here, we reject defendant's contention that the prosecution opened the door to the admission of a hearsay statement from the robber. In these circumstances, we fail to perceive how the admission of someone else's statement was necessary to correct any misleading impression

> caused by the admission of defendant's statements about where the car
> had been located.

*People v. Daniel Stuart,* 06CA841 at 3-5.

Although Applicant challenges the state court's exclusion of hearsay evidence, a federal habeas court generally does not review a state court's evidentiary rulings, *see, e.g., Estelle*, 502 U.S. at 67-68, because its review is concerned only with whether Applicant has presented a violation of "the Constitution, laws, or treaties of the United States." *Id.* at 68. State evidentiary determinations normally do not present federal constitutional issues. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"). But "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process," habeas relief is available. *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (quotations and brackets omitted); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (observing that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" (quotations omitted)). Further, although state and federal rules of evidence are helpful in determining whether a defendant's constitutional rights were violated, on habeas corpus review the Court need not address the state or federal rules of evidence, *see Hopkinson v. Shillinger*, 866 F.2d 1185, 1200 (10th Cir. 1989), because the Court's inquiry is limited to whether the state court's hearsay determination deprived the defendant of his constitutional rights to due process and to compel favorable testimony. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

9

During Applicant's trial, an investigator for the prosecution testified on direct examination that Applicant drew a diagram of the Red Lobster crime scene during his preliminary hearing testimony.  *See* State Court Record, 12-12-05, p. 213.  On cross-examination, Applicant's attorney requested permission from the court to ask the investigator about other testimony she had given during the preliminary hearing.  *See* State Court Record, 12-13-05, p. 23.  Specifically, Applicant's attorney wanted to asked the investigator about her testimony regarding Applicant's co-defendant, Carlos Ardon-Reyes.  *Id.* at 24.  The following exchange occurred:

> [Defense attorney]: Well, I think one of the main question is going to be whether, in fact, she interviewed Carlos Ardon-Reyes. Yes. And didn't he tell you that [Applicant] had nothing to do with this? Yes. And these are some of the questions from the preliminary transcript. And didn't he tell you that he was the only one that had a gun? Yes.

> [Prosecutor]: Well, Judge, first of all, I didn't ask her anything about what she testified to at the prelim. I asked her about what the defendant drew. The other thing is anything Carlos Ardon-Reyes said is hearsay unless it's a statement during, in the course of, or in furtherance of the conspiracy. So any interviews they did with him afterwards are hearsay unless he testifies.

> And [Carlos Ardon-Reyes] is here. He's in jail. I mean, I don't know if he wants to take the stand because he's got a 35-B pending, but they can sure try to call him if they want.

> The Court: I'll sustain the objection at this time. If [Carlos Ardon-Reyes] testifies, obviously that would be a prior statement of his, and you can cross-examine or impeach him or direct examination with him on that statement that he purportedly made to the officer.

> [Defense]: But isn't this - - isn't this the prior testimony that I can go into because it's under oath?

> The Court: No. You cannot because it's hearsay. It's a hearsay statement. And he's available.

*Id.* at 24-25.

10

Applicant's counsel argued that the prosecution opened the door to the testimony because "they have asked [the investigator] if she testified at a prior hearing and if she remembered testifying at a prior hearing." Trial Court Record, 12-13-05, p. 23-24. However, on direct exam, the investigator did not testify regarding any statements made to her by Mr. Ardon-Reyes. *See* Trial Court Record, 12-12-05, p. 201-214, 219, 224-25; 12-13-05, p. 12-15. Instead, her testimony was limited to her investigation of the scene of the crime, electronic and video evidence that she collected, and the fact that during the preliminary hearing, she saw Applicant draw a diagram of "where he said he was located" during the robbery. *See id.* Because the investigator did not testify regarding alleged statements made by Mr. Ardon-Reyes, it is not clear how her testimony could have "opened the door" to cross-examination on these statements.

In addition, because Mr. Ardon-Reyes was available to testify at Applicant's trial regarding any exculpatory statements he made during the preliminary hearing, the exclusion of the hearsay evidence was not fundamentally unfair. This is because "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). In addition, through evidence elicited on cross-examination and discussed during closing arguments, Applicant was able to present his

theory of defense that he was not involved with the robbery, and that he acted under duress from Mr. Ardon-Reyes. *See, e.g.,* Trial Court Transcript, 12-15-05, p. 68-83.

After reviewing the record, the Court finds that the appellate court applied the appropriate factors and did not reach an unreasonable conclusion. Accordingly, the

11

Court finds that the Colorado Court of Appeals' determination that the trial court did not improperly exclude this evidence is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.  Applicant is not entitled to habeas relief on this claim.

### B.    Claim Two

Second, Applicant asserts that the trial court failed to adequately respond to the jury's request for clarification regarding the distinction between complicity and accessory to crime.  He argues that the trial court erred by simply referring the jury to the instructions, and that "[t]he court's erroneous instruction, read in conjunction with other instructions, does not adequately inform the jury of the applicable law."  Second Amended Application at 29.

In addressing this claim, the Colorado Court of Appeals concluded the following:

Following the close of the evidence, the trial court instructed the jury that it could find defendant guilty (1) as a complicitor in the crimes of aggravated robbery and menacing and (2) as an accessory to those crimes.  The court also provided the jury with instructions setting forth the elements of complicity and accessory liability.

During deliberations, the jury sent out a note, requesting a

1. Clear definition of complicity or accessory to a crime – when would he need to know about the crime in order to be complicitous?
- - Need a specific time line:
Before entering parking lot?
Before entering Red Lobster?
Before re-entering the car?
At what point does it go from complicity to accessory?

The court and the parties discussed, at length, a suitable response to the jury's inquiry.  Everyone agreed the response should not reference a time line.  After extensive discussion, and with the approval of both parties, the court answered the jury's inquiry as follows:

Please rely on the instruction for the definition of complicity in instruction # 22.

The elements of Accessory are as contained on each of the instructions defining Accessory.

They are not exclusive you may find the Defendant guilty or not guilty as both a Complicitor and or Accessory.  They should be treated as separate charges as discussed in instruction # 9.  The defendant may be found guilty or not guilty of any one of or all of the offenses charged.

"Complicity" used to be referred to as accessory before and or during the crime while "accessory" as used in these instructions used to be referred to as accessory after the crime.  These concepts are covered by a close reading of the instructions.

On appeal, defendant contends that that part of the trial court's response referencing "complicity" and "accessory" in terms of older notions of accessory before, during, and after the crime was confusing and misstated the law.  According to him, it erroneously allowed for conviction as a complicitor even if the jury found defendant first realized what the robber had done only when the robber ran back to the car.

The doctrine of invited error precludes a party from complaining on appeal of an error that he has injected into the case.  *People v. Rivers*, 70 P.3d 531, 534 (Colo. App. 2002).  In this regard, "[a]ctive participation in the preparation of a response to a jury question, or express agreement with it, bars the participant from arguing that the response constitutes error."  *Id.*; *see also People v. Hoover*, 165 P.3d 784, 796-97 (Colo. App. 2006) (same); *People v. White*, 64 P.3d 864, 875 (Colo. App. 2002) ("Where a defendant actively participated in the preparation of a response to the jury, or expressly agrees to it, he or she is prevented from asserting error with respect to the response."); *People v. Hendrickson,* 45 P.3d 786, 793 (Colo. App. 2001) (same); *People v. Bielecki*, 964 P.2d 598, 608 (Colo. App. 1998) (same).

Under the foregoing authorities, because he actively participated in and agreed to the court's response, defendant is precluded from raising on appeal a claim of error with respect to the instruction.

In so concluding, we necessarily reject defendant's assertion that we should review his contention for "plain error" because he initially proposed a different type of response, one which referenced only complicity and made no reference to notions of accessory before, during,

or after the crime.

> . . . .

> In the present case, after defendant proposed one answer to the jury's inquiry, the trial court responded by, among other things, noting that the elements of, and the distinctions between, complicity and accessory liability were already adequately set forth in the original instructions. It was only after the prosecutor suggested that those distinctions might only be evident to "us . . . lawyers" that the court inquired whether the parties would like to have the court explain to the jury the difference between complicity and accessory using the older terms of accessory before, during, or after the crime. Defendant encouraged the court to do so, helped draft the particular language of the response pertaining thereto, and then affirmatively approved the final language that the court gave to the jury.

> As in *Hoover*, although defendant may have initially proposed one answer to the jury's inquiry, his active participation in drafting, and express agreement with, another precludes him now from complaining that the latter answer was error. For this reason, we conclude reversal is not warranted on this ground.

*People v. Daniel Stuart,* 06CA841 at 6-11.

As a preliminary matter, Respondents assert that Applicant's second claim is procedurally barred. They argue that the Colorado Court of Appeals dismissed this claim on the basis of the invited error doctrine, which Respondents conclude is a firmly established and regularly followed state procedural rule.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Fair presentation requires that the

14

federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534.

If "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have procedurally defaulted his claims and federal habeas review is precluded. *Id.* at 755 n. 1. Indeed, a federal district court "does not address issues that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman,* 501 U.S. at 730.

However, it is not clearly established in the Tenth Circuit that application of the invited error doctrine in the state courts provides a basis for a finding of procedural default in a habeas corpus action. *See Sims v. Watkins*, 205 Fed. Appx. 700, 702 (10th Cir. Nov. 14, 2006) (unpublished opinion) (holding that district court's determination that it was barred from reviewing a claim dismissed in the state court's on the basis of invited error was "debatable"), *see also Tiger v. Workman*, 445 F.3d 1265, 1267-68 (10th Cir. 2006) (treating state court's determination that "invited error" doctrine prevented relief as to erroneous jury instructions as adjudication on the merits, not as procedural bar). Therefore, the Court declines to dismiss this claim as procedurally defaulted and will proceed to the merits.

In the federal habeas context, "not every ambiguity, inconsistency, or deficiency

15

in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997). "[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and . . . due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that in considering a habeas claim based on an improper jury instruction, the court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable [or] erroneous") (quotations omitted)). The improper instruction "may not be judged in artificial isolation," *id.* (quotation omitted), but must be considered "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

In this case, the jury submitted a question to the trial court regarding when complicitor liability changes to accessory liability. The trial court referred the jury back to the jury instructions, which adequately answer this question. The instruction for complicity, Jury Instruction No. 22, required the prosecution to prove beyond a reasonable doubt that: (1) a crime was committed, (2) another person committed all or part of the crime, (3) Applicant had knowledge that the other person intended to commit all or part of the crime, (4) Applicant had the intent to promote or facilitate the commission of the crime, and (5) Applicant aided, abetted, advised, or encouraged the other person in the commission or planning of the crime. *See* Trial Court Record, Vol. 1

16

at 183.  The instructions for accessory, Jury Instruction Nos. 24-28, required the prosecution to prove beyond a reasonable doubt that: (1) the Applicant rendered assistance to another person, (2) with intent to hinder, delay or prevent, (3) the discovery, detention, apprehension, prosecution, conviction or punishment of such person, (4) for the commission of the crime at issue, (5) knowing the person being assisted committed the crime at issue.  *Id.* at 185-89.  These jury instructions accurately state the law regarding complicity and accessory crimes in the State of Colorado at the time of Applicant's conviction.  *See* Colo. Rev. Stat. § 18-1-603 (2008); Colo. Rev. Stat. § 18-8-105 (2008); *see also People v. Broom*, 797 P.2d 754, 755 (Colo. App. 1990).

The jury instructions adequately set forth the distinction between complicity and accessory, which is that a person is guilty of complicity if he helped prepare for or carry out a crime, and a person is guilty of an accessory crime if he helped another person escape justice for a crime he has committed.  *See id.*  Therefore, the trial court's response which referred the jury to the instructions for complicity and accessory was not improper.  Further, the final paragraph of the trial court's response, which discussed

the old concepts of accessory, before, during, and after the fact, correctly reinforced the distinction between complicity and accessory crimes.  *Id.*

Having carefully reviewed the record, the jury instructions, and the trial court's response to the jury's question, the Court agrees that when taken as a whole, the effect of the jury instructions was to require the prosecution to prove all of the elements of complicity and accessory beyond a reasonable doubt.  *See* Trial Court Record, Vol. 1 at

17

159-91.   The jury instructions in this case do not meet the standard of being "so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen*, 131 F.3d at 1347.   Therefore, the Court find that the decision of the Colorado Court of Appeals was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.   Accordingly, Applicant is not entitled to relief on this claim.

### C.   Claim Three

Third, Applicant asserts that his convictions for felony menacing and aggravated robbery violate double jeopardy because felony menacing is a lesser included offense of aggravated robbery.

The Colorado Court of Appeal rejected Applicant's argument that the elements of the crimes with which he was charged were the same, holding that the crimes of felony menacing and aggravated robbery contain different elements, and therefore, do not violate the principles of double jeopardy.   *People v. Daniel Stuart,* 06CA841 at 11-13.

The test for whether a defendant has been charged twice for commission of the same crime was set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).   In *Blockburger,* the Supreme Court stated that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."   *Id.* at 304.   Further, "[i]n a habeas corpus proceeding under section 2254, a federal court should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more

than one offense for double jeopardy purposes." *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993).

In Colorado, a person commits aggravated robbery if, during the act of robbery or immediate flight therefrom and by use of force, threats, or intimidation with a deadly weapon, he knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury. *See* Colo. Rev. Stat. § 18-4-302(1)(b) (2008). Felony menacing is committed when, by any threat or physical action, and with the use of a deadly weapon, a person knowingly placed or attempts to place another person in fear of imminent serious bodily injury. *See* Colo. Rev. Stat. § 18-3-206(1)(a) (2008). As the appellate court concluded, felony menacing is not a lesser included offense of aggravated robbery because "[t]he requirement in the felony menacing statute that the actor knowingly places a victim in fear of 'serious bodily injury' is distinguishable from the requirement that the robbery knowingly places a victim in fear of 'bodily injury.'" *People v. Daniel Stuart,* 06CA841 at 13 (quoting *People v. Sisneros*, 606 P.2d 1317, 1318 (Colo. App. 1980)); *see also Kreiser v. People*, 604 P.2d 27 (1979) (distinguishing fear of "serious bodily injury" from fear of "bodily injury").

After review of the relevant Colorado statutes, the Court find it clear that the crimes of aggravated robbery and felony menacing require different proof and are separate and distinct crimes. Therefore, the Court finds that the state court's determination that the crimes at issue contain different elements did not result in a decision that was contrary to, or involved an unreasonable application of, *Blockburger*. Applicant is not entitled to habeas relief on this claim.

   **D.   Claim Four**

19

Finally, Applicant asserts that there is insufficient evidence to support his convictions for menacing.  He argues that the prosecution failed to present any evidence from which a reasonable fact-finder could conclude beyond a reasonable doubt that Applicant knew that Mr. Ardon-Reyes intended to menace the Red Lobster employees, and that he intended to promote or facilitate the commission of the crime of menacing.  Second Amended Application at 36-37.

In addressing this claim, the appellate court concluded:

> When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Grant*, 174 P.3d at 811.

> Complicity is not a separate crime or offense; it is a theory by which a person becomes accountable for the criminal offense committed by a principal.  *Grissom v. People*, 115 P.3d 1280, 1283 (Colo. 2005).

> At common law, "accomplice liability extend[ed] to acts of the principal in the first degree which were a 'natural and probable consequence' of the criminal scheme the accomplice encouraged or aided."  *See* 2 Wayne L. LaFave, *Substantive Criminal Law* § 13.3(b), at 361 (2d ed. 2003) (footnote omitted) (citing this as "[t]he established rule"); *see also State v. Carson*, 950 S.W.2d 951, 954-55 (Tenn. 1997) (citing this as the "common law rule," widely accepted and applied by other jurisdictions").

> This common law rule has been criticized as "being inconsistent with . . . fundamental principles of our system of criminal law," *see* 2 LaFave, § 13.3(b), at 362 ("It would permit liability to be predicated upon negligence even when the crime involved requires a different state of mind."); *see also* American Law Institute, Model Penal Code and Commentaries § 2.06 cmt. 6(b), at 312 (1985) (MPC) ("[T]he liability of an accomplice ought not to be extended beyond the purposes that he shares. Probabilities have an important evidential bearing on these issues; to make them independently sufficient is to predicate the liability on negligence when, for good reason, more is normally required before liability is found.").

Colorado's complicity statute provides:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facility the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

§ 18-1-603, C.R.S. 2008.

In *Bogdanov v. People*, 941 P.2d 257 (Colo.), *amended*, 955 P.2d 997 (Colo. 1997), the supreme court noted:

[S]ome jurisdictions have complicity statutes that would hold an accomplice liable for any crimes that are a reasonably foreseeable consequence of the crime which the accomplice intended to aid or encourage.  The Colorado General Assembly chose not to extend accomplice liability to reasonably foreseeable crimes, but rather limited such liability to those particular crimes which the accomplice intended to promote or facilitate.

941 P.2d at 251 n.8 (citations omitted).

To convict under a complicity theory, the prosecution must prove that the alleged complicitor had a dual type of mens rea, that is, that he or she (1) had the culpable mental state required for the underlying crime committed by the principal, and (2) intended that his or her conduct would have the effect of assisting or promoting the commission of the crime. *People v. Montoya*, 141 P.3d 916, 920 (Colo. App. 2006).

What we have said so far might appear, on the face of it, to support defendant's contention that, absent evidence he knew that the robber entered the restaurant intending to menace people other than the restaurant manager, he could not be convicted as a complicitor of menacing the three hostesses.

However, consistent with Colorado's rejection of a "natural and probable" or "foreseeable" consequences rule,

[o]ne who solicits an end, or aids or agrees to aid in its achievement, [can be] an accomplice in whatever means may be employed, insofar as they constitute or commit an offense fairly envisaged in the purposes of the association.  But, when a wholly different crime has been committed, thus involving conduct not within the conscious objectives of the accomplice, he is not liable

for it . . . .

MPC § 2.06 cmt. 6(b), at 311.

Here, there was ample evidence upon which the jury could infer that defendant (1) knew the robber was armed with a gun and intended to use that gun to commit an armed robbery inside the restaurant and (2) intended to assist him in the commission of that crime.  Because the robber's acts in using the gun to threaten any number of restaurant employees (or, for that matter, anyone else in the restaurant) to obtain  - - and get away with  - - the restaurant's money were acts "fairly envisaged in the purposes" of the criminal association, defendant could be held liable for the crimes.

Consequently, we conclude that defendant could properly be convicted of menacing the three hostesses.

*People v. Daniel Stuart,* 06CA841 at 13-18.

Applicant's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Id.* at 319 (emphasis in original). The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).  In applying *Jackson*, the Court looks to state law to determine the substantive elements of the offense.  *See Jackson*, 443 U.S. at 324 n. 16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004).  Finally, in

22

examining these types of challenges, a federal court owes a state court's decision "deference squared." *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007) (citing *Torres v. Lytle,* 461 F.3d 1303 (10th Cir. 2006)); *see also United States v. Dedman*, 527 F.3d 577, 592 (6th Cir. 2008) (holding that a defendant bears "a very heavy burden" in making a sufficiency of the evidence claim).

Upon review of the record, the Court finds Applicant has failed to demonstrate that the Colorado Court of Appeals' determination of this claim was contrary to, or an unreasonable application of, *Jackson v. Virginia*. The Court finds that, under Colo. Rev. Stat. § 18-3-206(1)(a) (2008), felony menacing is committed when, by any threat or physical action, and with the use of a deadly weapon, a person knowingly placed or attempts to place another person in fear of imminent serious bodily injury. Complicity, on the other hand, is not a separate and distinct crime or offense. *See Grissom v. People*, 115 P.3d 1280, 1283 (Colo. 2005). Instead, it is "a theory by which a defendant becomes accountable for a criminal offense committed by another." *Id.* (quoting *People v. Thompson*, 655 P.2d 416, 418 (Colo. 1982)). Colorado's complicity statute provides:

> A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

Colo. Rev. Stat. § 18-1-603 (2008).

As identified by the Colorado Court of Appeals, the prosecution presented evidence that (1) Applicant knew Mr. Ardon-Reyes was armed with a gun and intended to use that gun to commit an armed robbery inside the restaurant and (2) Applicant intended to assist Mr. Ardon-Reyes in the commission of that crime, by serving as the

driver of his get-away car.  Under existing Colorado precedent, this Court cannot say that the evidence against Applicant, when taken in the light most favorable to the State, supports any reasonable doubt with respect to the menacing charges.  *See Jackson*, 443 U.S. at 319.  Accordingly, the Colorado Court of Appeals' conclusion that there was substantial evidence to support the verdict against Applicant was a correct application of the law to the facts, and Applicant is not entitled to relief on this claim.

## IV.    Conclusion

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is ordered:

1.    Applicant Daniel Stuart's Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.  § 2254 (Docket No. 12) is denied.

2.    No certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

3.    Leave to proceed *in forma pauperis* on appeal is denied.

4.    This case is dismissed with prejudice.

Dated this 7th day of May, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge